# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Geisler v. Everest National Insurance Co.*, 2012 IL App (1st) 103834

---

| | |
|---|---|
| Appellate Court Caption | FRED GEISLER, Plaintiff-Appellant, v. EVEREST NATIONAL INSURANCE COMPANY and WESTERN LITIGATION, INC., Defendant-Appellees. |
| District & No. | First District, Sixth Division<br>Docket No. 1-10-3834 |
| Filed | November 16, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action alleging a breach of defendants' obligations with regard to two claims under the medical malpractice insurance provided for plaintiff in his capacity as a neurosurgeon, summary judgment was properly entered for defendants on the grounds that the policy did not provide coverage for plaintiff in the first claim and no duty to provide a defense existed, and in the second claim, plaintiff had no right to approve the settlement of the suit and defendants timely paid for the defense of that claim. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08-CH-47262; the Hon. Nancy J. Arnold, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Patrick J. McGuire and Philip J. McGuire, both of Law Offices of Patrick J. McGuire, of Chicago, for appellant.

Ross D. Roloff, of Merlo Kanofsky & Gregg, Ltd., of Chicago, for appellees.

Panel

JUSTICE R. GORDON delivered the judgment of the court, with opinion.
Presiding Justice Lampkin specially concurred, with opinion.
Justice Garcia specially concurred, with opinion.

## OPINION

¶ 1    Plaintiff Fred Geisler, M.D., filed this suit claiming that defendants Everest National Insurance Company (Everest) and Western Litigation, Inc. (Western), breached its duties under the Everest insurance policy (Everest Policy) regarding two medical malpractice lawsuits in which plaintiff was a named defendant (Townsley Lawsuit and Lalicata Lawsuit). Defendants responded claiming that plaintiff failed to state a claim for breach of the Everest Policy regarding its defense of the Townsley Lawsuit, and that the Everest Policy did not provide plaintiff with coverage for the Lalicata Lawsuit.

¶ 2    In this appeal, plaintiff seeks to reverse the circuit court's orders granting summary judgment in favor of defendants. Specifically, plaintiff appeals the trial court's orders: (1) denying plaintiff's motion for partial summary judgment; (2) granting summary judgment in favor of defendants; and (3) denying plaintiff's motion to reconsider and for leave to file a second amended complaint.

¶ 3    Defendants additionally challenge this court's jurisdiction to review the trial court's summary judgment orders, arguing that plaintiff's notice of appeal was untimely filed. Defendants argue that plaintiff's motion to reconsider and for leave to file a second amended complaint was not a proper posttrial motion and thus did not toll the time to appeal. Defendants also challenge this court's jurisdiction to review the trial court's order denying plaintiff's motion, arguing that the order was not a final judgment. We affirm.

¶ 4                              BACKGROUND
¶ 5                              I. The Parties
¶ 6    Plaintiff was formerly employed as a neurosurgeon with the Chicago Institute of Neurosurgery and Neuroscience, Inc. (Chicago Institute), from September 1, 1992, until his employment was terminated allegedly "for cause" on January 4, 2004. On January 1, 2003, the Chicago Institute began providing its employees medical liability insurance under the

Everest Policy. Plaintiff was an insured under the Everest Policy during his employment with the Chicago Institute, and the Everest Policy listed his coverage as effective from September 1, 1992, through December 31, 2003. Defendant Western, a liability claims and risk management company, was contracted by defendant Everest to administer the claims made under the Everest Policy.

¶ 7    In January 2003 and March 2004, plaintiff was added as a defendant in two medical malpractice lawsuits: the Townsley Lawsuit and the Lalicata Lawsuit, respectively. Defendant Everest reimbursed plaintiff's defense costs in the Townsley Lawsuit, which was settled without plaintiff's consent, but did not defend him in the Lalicata Lawsuit.

¶ 8    As a result, plaintiff brought the instant litigation, claiming that defendants Everest and Western breached their duties under the Everest Policy by: (1) failing to timely reimburse his defense costs in the Townsley Lawsuit; (2) settling the Townsley Lawsuit without his consent; and (3) failing to tender plaintiff a defense in the Lalicata Lawsuit. Plaintiff additionally sought damages under section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2004)), claiming Everest acted in bad faith. Defendants filed affirmative defenses claiming that: (1) defense costs for the Townsley Lawsuit were timely paid; (2) plaintiff's consent was not required to settle the Townsley Lawsuit; (3) the Everest Policy did not provide plaintiff with coverage in the Lalicata Lawsuit; and (4) defendants alternatively had no duty to defend plaintiff in the Lalicata Lawsuit under the provisions of the Everest Policy.

¶ 9                                II. The Everest Policy

¶ 10    Plaintiff's employer, the Chicago Institute, was obligated under its employment agreement to provide its employees with medical malpractice insurance. From January 1, 2003, through December 31, 2003, the Chicago Institute contracted with defendant Everest to cover its employees under the Everest Policy. The Everest Policy was a "claims made" medical liability insurance, covering "loss events," including "medical professional services," or services rendered to a patient for care and treatment in the practice of medicine. Defendant Everest reserved "the right but not the duty or obligation to defend any 'claim' or suit against an 'Insured.' " The claims made provision provided coverage for claims that were first made and reported to defendant Everest during the policy period or during an "extended reporting period." An extended reporting period extends the time for reporting claims after the policy period ends.

¶ 11    The Everest Policy contained several endorsements that periodically amended the terms of the policy's coverage. One such endorsement was a "schedule of medical insureds" that amended the Everest Policy on November 30, 2003, to list the physicians who were provided coverage (Original Schedule). Plaintiff was listed as an insured on the Original Schedule with a retroactive effective date of September 1, 1992. The Original Schedule did not have a termination date. However, the policy period ended on December 31, 2003. The Everest Policy states that a retroactive date provides an insured with coverage for claims that predate the inception of the Everest Policy.

¶ 12    On December 31, 2003, plaintiff was sent correspondence from defendant Everest

informing him that he was no longer insured and would not receive any future coverage. On August 10, 2004, the Everest Policy was amended by an endorsement to list December 31, 2003, on the Original Schedule as the date of termination of plaintiff's coverage (General Change Endorsement). On September 9, 2004, the Everest Policy was amended by an endorsement to replace and supersede the Original Schedule with a new schedule of medical insureds that no longer listed plaintiff as an Insured (Revised Schedule). Also on that day, the Everest Policy was amended by endorsement to include an extended reporting period that extended the period to file claims indefinitely, with an effective date of January 1, 2004. The appellate record does not indicate that plaintiff received any notice of the foregoing endorsements.

¶ 13 The Everest Policy contained a $2,500,000 self-insured retention clause (SIR). Similar to a deductible, the SIR required the Chicago Institute to pay for the first $2,500,000 of costs incurred to defend, settle, or otherwise resolve the claims covered under the Everest Policy. On December 15, 2008, the Chicago Institute and defendant Everest entered into a confidential settlement agreement, release and covenant not to sue (Settlement Agreement). The Settlement Agreement rendered the SIR exhausted on that day, with respect to all existing and future claims under the Everest Policy.

¶ 14 Under the provisions of its policy, defendant Everest had the right to "[s]ettle, or participate in the settlement of, any 'claim first made' that is settled with the consent of the general counsel of the named insured shown in the 'Declarations.' " The Everest Policy contained no explicit language conferring settlement consent rights to any insured other than the general counsel of the named insured. Effective January 1, 2004, the Everest Policy was amended to identify the Chicago Institute as a named insured. The Everest Policy did not identify the general counsel of the named insured, but it designated Michael Kelly, a partner with the firm Hinshaw & Culbertson (Hinshaw), as the defense counsel by the Named Insured. The Chicago Institute later waived, effective December 15, 2008, the right to consent provision pursuant to the Settlement Agreement.

¶ 15                                  III. The Townsley Lawsuit

¶ 16 The Townsley lawsuit arose from patient Peter Townsley's spinal surgery, which was performed by plaintiff on September 18, 2001, resulting in Townsley's loss of use and function of his right arm. These complications led Townsley to later sue plaintiff for medical malpractice on January 30, 2003. Defendant Everest retained Hinshaw, designated by the named insured under the Everest Policy as defense counsel, to defend plaintiff in the Townsley Lawsuit. In December 2003, Hinshaw separately advised the Chicago Institute on matters related to the termination of plaintiff's employment. In March 2004, plaintiff personally retained Hickey, Malia and Associates (Hickey Malia) to represent him in the Townsley Lawsuit. Under the terms of the Everest Policy's coverage, the Chicago Institute reimbursed Hickey Malia for the costs and attorney fees in defending the Townsley Lawsuit since the SIR had yet to be exhausted.

¶ 17 Defendant Western made the payments on behalf of the Chicago Institute. Specifically, Western sent five checks to the attorneys totaling $27,350.25 from September 2005 through

June 2007. From July 2007 through November 2008, Hickey Malia sent to defendant Western six additional invoices totaling $43,533.68 in defense costs. Plaintiff requested an explanation from defendants Everest and Western as to why these defense reimbursement payments were not made. Defendant Western responded that the payments were subject to the SIR and that the Chicago Institute, not defendant Everest, was obligated to pay. Defendant Everest later reimbursed plaintiff for these defense costs, after the SIR was exhausted on December 15, 2008. Specifically, defendant Western, on behalf of defendant Everest, sent Hickey Malia a $45,007.98 check for defense payments on December 29, 2008.

¶ 18     On March 17, 2009, plaintiff learned that defendant Western proposed to enter into a settlement agreement with Townsley, and plaintiff notified defendant Western the next day that he did not consent to the proposed $150,000 settlement. Despite his requests to review the settlement proposal and for additional time to discuss the matter with counsel, plaintiff did not receive copies of the settlement papers until the matter was settled without his consent on March 27, 2009.

¶ 19     On June 24, 2009, plaintiff advised defendant Western that he had no additional invoices. Defendant Western, on behalf of Everest, made a final defense reimbursement to Hickey Malia in the amount of $3,917 on July 16, 2009. Plaintiff concedes that defendants Everest and Western paid the defense costs and attorney fees for the Townsley suit.

¶ 20                                   IV. The Lalicata Lawsuit

¶ 21     The Lalicata Lawsuit arose from spinal surgery performed on March 12, 2002, on patient Caterina Lalicata by plaintiff and Dr. Mark Connolly, a physician who was not employed by the Chicago Institute. Lalicata died from complications that day. After the surgery, defendant Everest retained Hinshaw to advise plaintiff on potential legal matters related to Lalicata's surgery. Lalicata's estate sued Dr. Connolly in October 2003. In March 2004, plaintiff and the Chicago Institute were added as defendants to the Lalicata Lawsuit, and plaintiff personally hired Hickey Malia as his defense counsel. That month, on March 29, the Chicago Institute sent a letter to defendant Everest informing it of the litigation and requesting that it not defend plaintiff due to the termination of his employment. Defendant Everest acceded to the request and tendered a defense to the Chicago Institute but not to plaintiff, believing plaintiff was no longer covered under the Everest Policy. Plaintiff was eventually nonsuited from the Lalicata Lawsuit on November 26, 2007.

¶ 22     In his complaint, plaintiff alleges that he incurred "significant" attorney fees and costs defending the Lalicata Lawsuit. Defendants Everest and Western provided no reimbursement for these fees. However, Cynthia Rendon, a claims attorney for defendant Western, stated in a sworn affidavit that plaintiff never submitted any defense cost invoices to defendant Western regarding the Lalicata Lawsuit.

¶ 23                                   V. Procedural History

¶ 24     Plaintiff filed this action on December 18, 2008, seeking a declaratory judgment to determine the rights and responsibilities of the respective parties under the terms of the Everest Policy. On March 27, 2009, plaintiff filed a "Verified Motion for a Temporary

Restraining Order," seeking to enjoin defendants from settling the Townsley suit without plaintiff's consent. The trial court denied the motion three days later. On March 31, 2009, the Chicago Institute filed a "Motion to Compel Mediation/Arbitration," which was later granted. Plaintiff and the Chicago Institute arbitrated their rights under the physician employment agreement, which is not an issue in this appeal.

¶ 25    On April 28, 2009, plaintiff filed a "First Amended Complaint for Declaratory Judgment," alleging breach of contract against defendant Everest, the Chicago Institute, and defendant Western, and for a declaratory judgment as to the rights and responsibilities of the respective parties under the terms of the Everest Policy, and for damages against defendant Everest for its bad faith in violation of section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2004)).

¶ 26    In count I, plaintiff alleged that defendant Everest breached the Everest Policy when it: (1) failed to make timely defense payments to plaintiff in the Townsley Lawsuit; (2) did not respond promptly to plaintiff's inquiries regarding the extent of the Everest Policy's coverage; (3) failed to provide plaintiff an opportunity to discuss the settlement of the Townsley Lawsuit with his counsel and belatedly delivered the settlement papers; (4) settled the Townsley Lawsuit without the consent of plaintiff or his counsel; and (5) failed to reimburse plaintiff for his costs defending the Lalicata Lawsuit.

¶ 27    In count III, plaintiff further alleged defendant Western breached the Everest Policy when it: (1) failed to make timely defense payments to plaintiff in the Townsley Lawsuit; (2) failed to provide plaintiff an opportunity to discuss the settlement of the Townsley Lawsuit with his counsel and belatedly delivered the settlement papers; (3) settled the Townsley Lawsuit without the consent of plaintiff or his counsel; (4) failed to reimburse plaintiff for his costs defending the Lalicata Lawsuit; (5) purposely interfered with plaintiff's rights under the Everest Policy; (6) purposely interfered with plaintiff's right to have his counsel draft the settlement agreement in the Townsley Lawsuit; (7) purposefully interfered with plaintiff's representation by counsel in the Townsley Lawsuit; and (8) acted with willful and wanton disregard of plaintiff's rights as a litigant represented by counsel.

¶ 28    In count V, plaintiff further sought a claim under the Illinois Insurance Code (215 ILCS 5/155 (West 2004)) for bad faith arising out of defendant Everest's unreasonable and vexatious conduct when it: (1) failed to make timely defense payments to plaintiff in the Townsley Lawsuit; (2) did not respond promptly to plaintiff's inquiries regarding the extent of the Everest Policy's coverage; (3) failed to provide plaintiff an opportunity to discuss the settlement of the Townsley Lawsuit with his counsel and belatedly delivered the settlement papers; (4) allowed defendant Western to settle the Townsley Lawsuit without the consent of plaintiff or his counsel; (5) failed to reimburse plaintiff for his costs defending the Lalicata Lawsuit; and (6) conspired with the Chicago Institute and defendant Western to deny plaintiff benefits owed under the Everest Policy.

¶ 29    Plaintiff and the Chicago Institute entered into arbitration pursuant to the provisions of plaintiff's employment contract with the Chicago Institute. The arbitration proceedings were bifurcated into two phases: liability and damages. In the first phase, the liability issues were decided in the Chicago Institute's favor. On May 19, 2009, the Chicago Institute filed a

"Motion to Stay or Dismiss Based on Mediation/Arbitration Agreement and/or Pending Arbitration." The Chicago Institute argued that the allegations in plaintiff's first amended complaint were subject to arbitration and were currently being arbitrated. The trial court granted the Chicago Institute's motion to compel arbitration on September 11, 2009, which removed the Chicago Institute from the lawsuit. The appellate record does not indicate the outcome of the arbitration proceedings.

¶ 30        Defendants filed their answer, affirmative defenses, and counterclaim for declaratory judgment on June 5, 2009, alleging that: (1) plaintiff no longer qualified as an insured at the time of the Lalicata Lawsuit; (2) there was no untimely payment of defense costs in the Lalicata Lawsuit; (3) defendants made timely payments for defense costs in the Townsley Lawsuit; and (4) plaintiff's consent was not required for settlement of the Townsley Lawsuit.

¶ 31        On January 27, 2010, plaintiff filed a motion for partial summary judgment against defendants on issues regarding the Lalicata Lawsuit in counts I, III, and IV. Plaintiff claimed that he was insured under the Everest Policy at the time the claim was filed, which entitled him to receive reimbursements for his costs in defending the Lalicata Lawsuit. Plaintiff further argued that, by law and under the terms of the policy, defendant Everest was not allowed to retroactively cancel plaintiff's coverage. In his brief in support of his motion for partial summary judgment, plaintiff argued that the Everest Policy provided defendants with a duty to defend in the Lalicata Lawsuit, and that judicial estoppel barred defendants from asserting any defenses to coverage.

¶ 32        Defendants filed their response and cross-motions for summary judgment on March 4, 2010. In their response, defendants argued that plaintiff was not insured under the Everest Policy when he filed his claim reporting the Lalicata Lawsuit, and, alternatively, that defendants did not have a duty to defend. In their cross-motion, defendants sought summary judgment as to counts I, III, IV, and V of plaintiff's complaint, in addition to all counts of defendants' counterclaim. Defendants argued that their payments to plaintiff for the defense of the Townsley Lawsuit were not untimely and that plaintiff's consent was not required to settle the Townsley Lawsuit.

¶ 33        On July 13, 2010, the trial court heard arguments and denied plaintiff's motion. During the hearing, the trial court cited *Continental Casualty Co. v. Cuda*, 306 Ill. App. 3d 340 (1999), and indicated that plaintiff's argument was making the mistake of turning the Everest Policy into an occurrence policy, rather than a claims made policy. The trial court held that defendants had "no obligation whatsoever" to defend plaintiff in the Lalicata Lawsuit because he was not an insured when the claim was first made. In its written order, the trial court found that, pursuant to the Revised Schedule, effective January 1, 2004, "plaintiff was not an 'insured' under the Everest Policy, and that the claim was first made on March 29, 2004."

¶ 34        On August 25, 2010, the trial court heard arguments and granted defendants' cross-motion for summary judgment. During the hearing, the trial court repeatedly questioned plaintiff about whether he had alleged any specific damages. At the end of the hearing, the trial court granted summary judgment in favor of defendants and found that plaintiff had not alleged damages to support a bad-faith claim under section 155 of the Illinois Insurance Code

(215 ILCS 5/155 (West 2004)). The trial court also found that the Everest Policy did not provide plaintiff with a right to consent to settlement. In its written order, the trial court stated: (1) that the reimbursements of plaintiff's defense costs of the Townsley Lawsuit were timely paid; (2) that plaintiff had no claim for damages regarding the defense reimbursements for the Townsley Lawsuit; and (3) that plaintiff's consent was not required to settle the Townsley Lawsuit.

¶ 35 Plaintiff then filed a "Motion to Reconsider, For Leave to File Second-Amended Complaint, and to Set Aside and Vacate Orders Entered July 13, 2010 and August 25, 2010." Plaintiff's motion sought to remedy errors of fact and law by including new and more fully developed allegations of damages regarding the Townsley Lawsuit. Plaintiff also argued that the estoppel doctrine barred defendants from raising affirmative defenses as to coverage of the Lalicata Lawsuit. On November 30, 2010, the motion to reconsider was denied.

¶ 36 On this appeal, defendants argue that plaintiff's September 24, 2010, motion was not a proper posttrial motion that tolled the time to appeal because it did not challenge the trial court's July 13, 2010, and August 25, 2010, orders on summary judgment. As a result, we quote the relevant part of plaintiff's September 24, 2010, motion:

> "The plaintiff, Fred Geisler, M.D., by and through his attorneys, the Law Offices of Patrick J. McGuire, hereby submits his motion for leave to file a second-amended complaint and to set aside and vacate orders entered on July 13, 2010, and August 25, 2010, stating as follows:
>
> 1. On July 13, 2010, the court entered an order denying plaintiff's motion for partial summary judgment. (Exhibit 1).
>
> 2. On August 25, 2010, the court entered an order granting defendants' motion for summary judgment. (Exhibit 2).
>
> * * *
>
> 6. The proposed second-amended complaint contains new and more fully developed allegations that render erroneous the factual and legal bases on which the court relied in support of its prior orders. For example, the proposed second-amended complaint contains more specific allegations and exhibits to support plaintiff's position that defendants should be estopped under cases such as *Employers Ins. of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127 (1999) from asserting the defenses to coverage for the Lalicata lawsuit on which the court based its summary judgment orders.
>
> 7. The proposed second-amended complaint also contains new and specific allegations that plaintiff incurred damages in the form of additional attorney's fees as a result of the 18-month delay in defendants' payment of defense costs relative to the Townsley lawsuit. Such allegations cure the perceived defect that plaintiff had not alleged any contract damages related to the Townsley lawsuit and, therefore, could not sustain a cause of action under § 155 of the Insurance Code for such delay.
>
> * * *
>
> WHEREFORE, for the reasons set forth herein, plaintiff requests that he be granted

leave to file within 14 days a brief in support of this motion to reconsider which points out the errors in this court's interpretation of the subject policy of insurance and further supports his claim that the court's prior orders should be vacated, and that he be granted leave to file a second-amended complaint in substantially the same form as the pleading attached hereto."

¶ 37    In denying plaintiff's motion to reconsider the trial court stated the following: "For the reasons stated by the Court in open court, the plaintiff's motion is DENIED." Neither a transcript nor a bystander's report of the hearing on the motion was provided in the appellate record. On December 22, 2010, plaintiff filed a notice of appeal, seeking reversal of the trial court's orders: (1) denying plaintiff's motion for partial summary judgment, (2) granting summary judgment in favor of defendants, and (3) denying plaintiff's motion to reconsider and for leave to file a second amended complaint.

¶ 38    On March 23, 2011, defendants filed a motion to dismiss this appeal for lack of jurisdiction, which another panel of this court denied on May 17, 2011. In their appellate brief, defendants ask us to reconsider the denial made by a different panel.

¶ 39                                                ANALYSIS

¶ 40    Plaintiff brings this appeal claiming that the trial court erred when it: (1) denied plaintiff's motion for partial summary judgment; (2) granted defendants' motion for summary judgment; and (3) denied plaintiff's motion to reconsider and for leave to file an amended complaint. Defendants additionally challenge this court's jurisdiction to review any of the trial court's orders. For the following reasons, we affirm.

¶ 41                                             I. Jurisdiction

¶ 42    Defendants first ask this court to reconsider its May 17, 2011, order denying defendants' motion to dismiss this appeal for lack of jurisdiction. Defendants claim that this court does not have jurisdiction to review plaintiff's September 24, 2010, motion to reconsider and for leave to file an amended complaint because the motion was not a proper posttrial motion that tolled the requisite time for appeal. Defendants also argue that the trial court's November 30, 2010, order denying plaintiff's motion was then not a final judgment.

¶ 43                                      A. Standard of Review

¶ 44    A reviewing court's jurisdiction to hear an appeal may be challenged at any time. *People v. Smith*, 228 Ill. 2d 95, 104 (2008). The appellate court also has an independent duty to consider its own jurisdiction. *Smith*, 228 Ill. 2d at 104. A jurisdictional challenge presents a question of law that we review *de novo*. *In re Marriage of Demaret*, 2012 IL App (1st) 111916, ¶ 25.

¶ 45                             B. Plaintiff's September 24, 2010, Motion

¶ 46    Defendants first claim that plaintiff's September 24, 2010, motion to vacate and for leave to file a second amended complaint was not a proper posttrial motion. According to Illinois

Supreme Court Rule 303(a)(1) (eff. May 30, 2008), a posttrial motion tolls a 30-day time period for filing a notice of appeal.

¶ 47    Illinois Supreme Court Rule 303(a)(1) states in relevant part:

"The notice of appeal must be filed with the clerk of the circuit court within 30 days after the entry of the final judgment appealed from, or, if a timely posttrial motion directed against the judgment is filed, whether in a jury or a nonjury case, within 30 days after the entry of the order disposing of the last pending postjudgment motion directed against that judgment or order ***." Ill. S. Ct. R. 303(a)(1) (eff. May 30, 2008).

"For a motion to qualify as a 'post-trial motion,' one or more of the types of relief specified in section 2-1203 must be specifically requested." *Marsh v. Evangelical Covenant Church of Hinsdale*, 138 Ill. 2d 458, 461 (1990).

¶ 48    Section 2-1203(a) of the Illinois Code of Civil Procedure states:

"In all cases tried without a jury, any party may, within 30 days after the entry of the judgment or within any further time the court may allow within the 30 days or any extensions thereof, file a motion for rehearing, or a retrial, or modification of the judgment or to vacate the judgment or for other relief." 735 ILCS 5/2-1203(a) (West 2008).

¶ 49    Defendants claim that plaintiff's September 24, 2010, motion must be construed merely as a motion for leave to file a second amended complaint because the motion did not "substantively" seek a rehearing, retrial, modification, or vacation of the trial court's July 13, 2010, and August 25, 2010, orders. 735 ILCS 5/2-1203(a) (West 2008). Additionally, defendants claim that plaintiff's motion did not seek "other relief" as also permitted by section 2-1203 of the Illinois Code of Civil Procedure. 735 ILCS 5/2-1203(a) (West 2008). See, *e.g.*, *Shutkas Electric, Inc. v. Ford Motor Co.*, 366 Ill. App. 3d 76, 81 (2006) (finding a motion for leave to file an amended complaint does not constitute "other relief"). Therefore, defendants argue, plaintiff's motion was not a valid posttrial motion and did not toll the 30-day time period for filing a notice of appeal. Ill. S. Ct. R. 303(a)(1) (eff. May 30, 2008) (permitting a 30-day time period for filing a notice of appeal).

¶ 50    Defendants are correct in that this court has found that a motion seeking only to file an amended complaint after a final judgment does not qualify as a posttrial motion for purposes of Illinois Supreme Court Rule 303(a)(1) (eff. May 30, 2008). *Fultz v. Haugan*, 49 Ill. 2d 131, 136 (1971). Thus, the issue before us is to determine whether plaintiff's motion sought more than leave to amend and whether it requested one or more of the types of relief set forth in section 2-1203 of the Illinois Code of Civil Procedure. 735 ILCS 5/2-1203(a) (West 2008). To determine whether a motion is a proper posttrial motion, we must review the substance of the motion, and not just its title. *Shutkas Electric, Inc. v. Ford Motor Co.*, 366 Ill. App. 3d 76, 81 (2006).

¶ 51    Reviewing the body of plaintiff's motion, we find it did seek to vacate the circuit court's prior orders. First, the title asked the trial court to "Reconsider" and "Set Aside and Vacate Orders Entered July 13, 2010, and August 25, 2010." Second, the introductory paragraph repeated this request, stating: "The plaintiff *** hereby submits his motion for leave to file a second-amended complaint and to set aside and vacate orders entered on July 13, 2010, and

August 25, 2010." Third, the motion listed the trial court's summary judgment orders and stated that an amended complaint would "render erroneous the factual and legal bases on which the court relied in support of its prior orders." Fourth, the motion alleged new facts that would "cure the perceived defect" that plaintiff "could not sustain a cause of action under § 155 of the Insurance Code." Fifth, in the prayer for relief, the motion once again asks the court to "reconsider" and requests that the "court's prior orders should be vacated."

¶ 52 Reviewed as a whole, the motion first presents itself as a motion to reconsider and to vacate the orders, then it alleges that the orders were grounded on inaccurate factual and legal bases, and finally it concludes by requesting the trial court to reconsider and vacate the orders. As a result, we find that the motion sought to vacate the trial court's orders of summary judgment, which is one type of request for relief specified in section 2-1203 of the Illinois Code of Civil Procedure. 735 ILCS 5/2-1203(a) (West 2008). Consequently, plaintiff's motion qualifies as a proper posttrial motion that tolls the time to appeal under Illinois Supreme Court Rule 303(a)(1) (eff. May 30, 2008).

¶ 53 Plaintiff filed a notice of appeal on December 22, 2010, or 22 days after the November 30, 2010, denial of his posttrial motion. Therefore, this court has jurisdiction to review each of the trial court's July 13, 2010, August 25, 2010, and November 30, 2010, orders.

¶ 54 C. Trial Court's November 30, 2010, Order

¶ 55 Defendants also claim that the trial court's November 30, 2010, order denying plaintiff's September 24, 2010, motion did not constitute a final judgment from which this court has jurisdiction to hear an appeal. In support, defendants cite *Sears v. Sears*, 85 Ill. 2d 253, 258 (1981), which held that "[a]n order denying a post-judgment motion is not itself a judgment, as that word is used *** in Supreme Court Rule 303 (73 Ill. 2d R. 303), and is not an appealable order."

¶ 56 However, defendants' argument is not persuasive because it is based on the premise that plaintiff's September 24, 2010, motion was not a proper posttrial motion. Illinois Supreme Court Rule 303(a)(1) (eff. May 30, 2008) grants jurisdiction to hear an appeal if the notice of appeal is filed within 30 days after a "final judgment" or "after the entry of the order disposing of the last pending postjudgment motion directed against that judgment or order." Additionally, the appellate court in *Sears*, 85 Ill. 2d at 258, held that "denial of a timely first post-judgment motion is always reviewable, because on appeal of the judgment the appellant may bring up all related orders entered before the notice of appeal and not previously appealable, including the denial of a post-judgment motion." As previously stated, we find that plaintiff's September 24, 2010, motion was a proper posttrial motion because it sought to vacate the trial court's July 13, 2010, and August 25, 2010, orders of summary judgment. The December 22, 2010, notice of appeal was then filed within 30 days after the trial court's order denying plaintiff's posttrial motion directed against the judgment, pursuant to Illinois Supreme Court Rule 303(a)(1) (eff. May 30, 2008).

¶ 57 Therefore, we find that this court has jurisdiction to review each of the trial court's July 13, 2010, August 25, 2010, and November 30, 2010, orders, and we decline to reverse our order denying defendants' motion to dismiss. We see no reasons to disturb the ruling of the

-11-

prior panel of this court, which reached the same conclusion.

¶ 58                  II. Denial of Plaintiff's Motion for Partial Summary Judgment

¶ 59      Having found that we have jurisdiction, we now turn to the trial court's summary judgment orders. Plaintiff claims that the trial court erred when it denied his January 27, 2010, motion for partial summary judgment. Plaintiff argues: (1) that the Everest Policy provided him with coverage over the Lalicata Lawsuit; (2) that defendant Everest had a duty to defend plaintiff in the Lalicata Lawsuit; (3) that defendant Everest is judicially estopped from raising any defenses to coverage; and (4) that public policy dictates that an insurance provider should not be allowed to retroactively terminate coverage after a claim has been filed. Defendants counter that the trial court did not err when it found plaintiff was not insured under the Everest Policy at the time the Lalicata claim was made.

¶ 60                                  A. Standard Of Review

¶ 61      The construction of an insurance policy and a determination of the rights and obligations of the parties thereunder are questions of law for the court to decide and may be appropriate subjects for disposition by way of summary judgment. *Steadfast Insurance Co. v. Caremark Rx, Inc.*, 359 Ill. App. 3d 749, 755 (2005) (quoting *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391 (1993)). Summary judgment is appropriate where the pleadings, depositions, and admissions on file, together with any affidavits and exhibits, when viewed in the light most favorable to the nonmoving party, indicate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2008). We review a circuit court's decision on a motion for summary judgment *de novo. Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). *De novo* consideration means the reviewing court performs the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 62      "Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt." *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). "Mere speculation, conjecture, or guess is insufficient to withstand summary judgment." *Sorce v. Naperville Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 328 (1999). A defendant moving for summary judgment bears the burden of proof. *Nedzvekas v. Fung*, 374 Ill. App. 3d 618, 624 (2007). The defendant may meet its burden of proof either by affirmatively showing that some element of the case must be resolved in its favor, or by establishing " 'that there is an absence of evidence to support the nonmoving party's case.' " *Nedzvekas*, 374 Ill. App. 3d at 624 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). We may affirm on any basis appearing in the record, whether or not the trial court relied on that basis, and even if the trial court's reasoning was incorrect. *Ray Dancer, Inc. v. DMC Corp.*, 230 Ill. App. 3d 40, 50 (1992).

¶ 63                          B. Everest Policy Coverage

¶ 64        Plaintiff claims that the Everest Policy provided him coverage for the Lalicata Lawsuit
because all the necessary conditions were met. As previously stated, the Everest Policy
covered medical insureds for loss events that occurred during the course of employment. It
is uncontested that plaintiff was an employee with the Chicago Institute and insured under
the Everest Policy at the time the claim was made. The claims made nature of the policy
provides coverage for claims made within a proper reporting period. Plaintiff argues that,
although his employment with the Chicago Institute was terminated on January 4, 2004, he
was still covered under the Everest Policy when he reported the Lalicata loss event on March
29, 2004.

¶ 65        Plaintiff's position is dependant upon a "snapshot" view of the Everest Policy on the day
he filed his claim. At that time, plaintiff was still listed as an insured under the Original
Schedule. It was not until August 10, 2004, or four months after he filed the Lalicata claim,
that the general change endorsement amended the Everest Policy to list the termination date
of plaintiff's coverage as January 1, 2004. Plaintiff's contention is that under the ordinary
and plain meaning, the Everest Policy still provided him with coverage on the day when he
filed his claim. *Rich v. Principal Life Insurance Co.*, 226 Ill. 2d 359, 371 (2007).

¶ 66        However, plaintiff was not covered under the policy, even if we were to accept his
snapshot view of the Everest Policy on the date that he filed his claim. The effective dates
for the Everest Policy were from January 1, 2003, until December 31, 2003. It was not until
September 9, 2004, about five months after plaintiff filed his claim, that the Everest Policy
was amended by endorsement to include the extended reporting period, with an effective date
of January 1, 2004. In essence, plaintiff is asking this court to find that the retroactive
effective date of the extended reporting period should be enforced, while the retroactive
termination date of his coverage should not. We find this view to be inconsistent and against
the clear meaning and construction of the Everest Policy on the date that plaintiff asks us to
construe it.

¶ 67        As the trial court noted, plaintiff's argument is construing the Everest Policy as an
occurrence policy, rather than claims made. An occurrence based policy provides an insured
with continuing coverage even after the policy period expires. *Continental Casualty Co. v.
Cuda*, 306 Ill. App. 3d 340, 349 (1999). In a claims made policy, two events must occur to
trigger coverage: (1) the claim must arise during the policy period; and (2) the claim must
be reported during the policy period. *Continental*, 306 Ill. App. 3d at 349. It is uncontested
that the loss that gave rise to the Lalicata Lawsuit occurred during the policy period when
plaintiff was still employed by the Chicago Institute. However, that alone is not enough for
coverage under the Everest Policy because coverage only occurs when the claim is made
during the policy period.

¶ 68        Retroactive dates were frequently used under the Everest Policy and are used in insurance
contracts in general, when a determination is made that an insured will no longer receive
coverage, and the policy is later amended to reflect that fact. See, *e.g.*, *Martz v. Union Labor
Life Insurance Co.*, 757 F.2d 135, 138 (7th Cir. 1985) (finding the effective date of policy
modification is governed by the terms of the modification); *Waitzman v. Classic Syndicate,*

*Inc.*, 271 Ill. App. 3d 246 (1995) (finding coverage for a claim that arose after the insurance policy's retroactive effective date). That is consistent with what happened to plaintiff's coverage under the Everest Policy, where plaintiff's employment with the Chicago Institute was terminated, then he was notified that he would no longer receive coverage under the Everest Policy, and later the Everest Policy was amended to reflect that change. We cannot say that plaintiff was covered under the Everest Policy when he filed his claim on March 29, 2004.

¶ 69                                    C. Duty to Defend

¶ 70      Plaintiff also claims that defendant Everest had a duty to defend in the Lalicata Lawsuit. Plaintiff cites the "eight corners rule," which holds that the court compare the four corners of the underlying complaint with the four corners of the insurance contract in order to determine whether the allegations fall within, or potentially within, the policy's coverage. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 393 (1993). Plaintiff claims that defendant Everest had a duty to defend him in the Lalicata Lawsuit because he was covered under the Everest Policy when he filed the claim on March 24, 2004. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 125 (1992).

¶ 71      However, plaintiff's argument follows the same line of reasoning as the one previously discussed–that the provisions of the Everest Policy must be construed under a specific snapshot in time–and likewise is not persuasive for the same reasons. The Everest Policy established a December 31, 2003, termination date for plaintiff's coverage, and defendant Everest did not have a duty to defend on any claims made after that date.

¶ 72      Even if coverage could potentially be found under the provisions of the Everest Policy, the language of the SIR provision explicitly states that the coverage does not provide defendant Everest with a duty to defend. The SIR provided that defendant Everest "shall have the right but not the duty or obligation to defend any 'claim' or suit against an 'Insured.' " As such, defendant Everest was not required to defend or indemnify defense costs incurred until the Chicago Institute, the Named Insured under the Everest Policy, paid the $2.5 million retained limit. The SIR was not exhausted until December 15, 2008, so any defense costs accrued prior to that date were the responsibility of the Chicago Institute to be applied against the SIR. Everest was not obligated under its policy to defend the Lalicata Lawsuit.

¶ 73                                    D. Judicial Estoppel

¶ 74      Plaintiff further argues that, under the doctrine of judicial estoppel, defendant Everest was barred from asserting defenses to coverage. *Clemmons v. Travelers Insurance Co.*, 88 Ill. 2d 469, 475 (1981). "The general rule of estoppel provides that an insurer which takes the position that a complaint potentially alleging coverage is not covered under a policy that includes a duty to defend may not simply refuse to defend the insured." *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127, 150 (1999). If an insurer has a duty to defend a suit, then it must either provide a defense with or without a reservation of rights, or seek a declaratory judgment. *Employers Insurance of Wausau*, 186 Ill. 2d at 147-48. Since defendant Everest did neither, plaintiff claims that defendant Everest breached its duty to

defend, and it is now estopped from claiming policy defenses to coverage.

¶ 75    Since Everest did not have a duty to defend, there can be no breach, and the doctrine of judicial estoppel would not apply. *Employers Insurance of Wausau*, 186 Ill. 2d at 151.

¶ 76                                    E. Public Policy

¶ 77    Additionally, plaintiff claims that public policy does not allow defendant Everest to retroactively cancel coverage after a claim had been filed. In support, plaintiff cites sections 143.11 and 143.6 of the Illinois Insurance Code, which outline the notice requirements for cancelling insurance coverage. 215 ILCS 5/143.11, 143.16 (West 2004). Plaintiff also cites *Associated Physicians Insurance Co. v. Obasi*, 262 Ill. App. 3d 343 (1993), as an example of Illinois courts strictly enforcing the notice requirements. Plaintiff then makes a broad assertion that *Associated Physicians* and the cited statutory provisions show that it is against public policy to retroactively terminate an insured's coverage, which should instead be done prospectively and with proper notice. Plaintiff further claims, with little explanation, that defendant Everest did not comply with the cancellation provision of the Everest Policy.

¶ 78    Plaintiff's argument is based on the premise that his coverage was cancelled, which it was not. In the case at bar, plaintiff no longer qualified for coverage following the termination of his employment, so the Everest Policy's cancellation and notice provisions did not apply. When plaintiff's employment was terminated, his medical malpractice insurance was also terminated in a claims made policy. As a result, the cited statutes do not apply because they govern the cancellation of an insurance policy. Also, plaintiff's cited case, *Associated Physicians*, is similarly distinguishable because it deals with the cancellation of insurance coverage, not its termination based on the termination of employment. As the trial court observed, it is a common practice among insurance contracts on claims made policies to amend policies by endorsement with a retroactive effective date, and this was done repeatedly throughout the history of the Everest Policy. Plaintiff's public policy argument does not apply to the facts of this case, as the Revised Schedule and General Change Endorsement did not amount to a retroactive cancellation of coverage.

¶ 79              III. Granting of Defendants' Motion for Summary Judgment

¶ 80    Plaintiff claims that the trial court erred when it granted defendants' motion for summary judgment. In finding in favor of defendants, the circuit court held: (1) that the defense payments for the Townsley Lawsuit were timely paid to plaintiff; (2) that plaintiff did not allege damages regarding coverage of the Townsley Lawsuit; and (3) that the Everest Policy did not provide plaintiff with a right to consent to settle the Townsley Lawsuit. Plaintiff argues that the 18-month gap between reimbursement checks was an unreasonable delay that would amount to a bad-faith claim under section 155 of the Insurance Code of Illinois. 215 ILCS 5/155 (West 2004). Plaintiff further argues that he did not need to allege missed defense payments because an unreasonable delay is actionable even if all payments are later paid in full. Finally, plaintiff claims that a conflict of interest prohibited defendants from settling the Townsley Lawsuit without his consent.

## A. Timeliness of Payments

¶ 82    In this appeal, plaintiff challenges the trial court's finding that he was timely paid for his defense costs of the Townsley Lawsuit. Plaintiff claims, and defendants admit, that there was an 18-month delay between payments, from June 2007 to December 2008. Plaintiff argues that this delay was unreasonable and vexatious, and is actionable under section 155 of the Insurance Code of Illinois. 215 ILCS 5/155 (West 2004).

¶ 83    However, pursuant to the SIR, defendant Everest was not obligated to pay plaintiff's defense costs until the SIR was exhausted on December 15, 2008. The issue of the 18-month delay in payments only concerned payments that were the responsibility of the Chicago Institute, which is no longer a party to this lawsuit. Defendant Everest first sent plaintiff a reimbursement payment two weeks after the SIR was exhausted, and a final payment was made July 16, 2009. We cannot say that Everest's payments were not reasonable or untimely.

## B. Allegation of Damages

¶ 85    Plaintiff claims that the circuit court erred when it found that plaintiff did not allege damages. In this appeal, plaintiff argues that he could still prevail in a claim for bad faith under section 155 of the Insurance Code of Illinois (215 ILCS 5/155 (West 2004)), even though defendants paid his defense invoices. In support, plaintiff cites *Calcagno v. Personalcare Health Management, Inc.*, 207 Ill. App. 3d 493 (1991), which found a claim for breach under the Insurance Code can be made even if all the benefits are paid in full prior to litigation. Plaintiff also argued that the 18-month gap in payments resulted in additional litigation costs, including this appeal.

¶ 86    Despite plaintiff's cited authority that an unreasonable delay can be actionable, plaintiff still has not alleged any recoverable damages in his complaint. Plaintiff's argument is that a claim may potentially prevail; however, the issue here is whether plaintiff properly stated a claim in the first place. As the trial court noted, any action for breach of contract requires an allegation that damages were sustained as a result of a breach. In his complaint, plaintiff fails to show how the delay in payments caused any damages. Also, plaintiff's argument that the gap between payments resulted in extra litigation costs is contrary to the "American Rule" of recoverable damages. *International Insurance Co. v. Rollprint Packaging Products, Inc.*, 312 Ill. App. 3d 998 (2000). Illinois normally follows the " 'American Rule,' " where a party is responsible for his or her own attorney fees. *In re Marriage of Pal*, 397 Ill. App. 3d 903, 910 (2010). "Generally, under the 'American rule,' a successful litigant may not recover attorney fees in the absence of a statute or a contractual agreement between the parties permitting recovery of attorney fees." *In re Estate of Elias*, 408 Ill. App. 3d 301, 323 (2011) (citing *Goldstein v. DABS Asset Manager, Inc.*, 381 Ill. App. 3d 298, 302 (2008)).

## C. Right to Consent to Settlement

¶ 88    Plaintiff claims that the trial erred when it found that he did not have a right to consent to the settlement of the Townsley Lawsuit. Plaintiff argues that defendants and the Chicago Institute waived their rights to control the settlement of the Townsley Lawsuit. Specifically, plaintiff alleges that a conflict of interest occurred when Hinshaw counseled the Chicago

Institute in settlement negotiations adverse to plaintiff's interests in the Townsley Lawsuit. Plaintiff cites a provision in the Everest Policy that provides in relevant part:

"If the Company chooses not to investigate a loss event, nor to defend any claim, of if the Company is precluded by an applicable law or regulation from selecting counsel to defend any Insured, the Insured will see to it that all necessary investigation and defense is made, and will, to the best of the Insured's ability effect settlement to which the Company agrees. Under such circumstances, the counsel selected by the Insured will be compensated, in excess of the retained limit and subject to the limits of liability as described in Article VI. of this policy, at charges consistent with the normal and customary rate that the Company pays counsel and selects for like cases in similar locations."

Plaintiff claims that a conflict of interest by law prohibited Hinshaw from representing plaintiff in the Townsley Lawsuit. Plaintiff argues that he then hired Hickey Malia as independent counsel, which, under the Everest Policy, was then charged with effecting settlement on behalf of the plaintiff. In support, plaintiff cites *Rogers v. Robson, Masters, Ryan, Brumund & Belom*, 81 Ill. 2d 201 (1980), which found that the attorneys in the case had a duty to make a full disclosure to the physician, in regard to the settlement of malpractice litigation without his consent. Thus, plaintiff argues that his consent was required to settle the Townsley Lawsuit.

¶ 89    Plaintiff's argument is not persuasive because it draws an incorrect conclusion concerning his settlement rights under the Everest Policy. Plaintiff describes the issue as an independent counsel problem, claiming that defendant Everest was prohibited by law from appointing plaintiff's counsel. However the alleged conflict of interest arose from a law firm that had previously represented plaintiff in a separate matter, and it was resolved upon the termination of plaintiff's employment when he hired Hickey Malia as his defense counsel. Additionally, *Rogers* is distinguishable because, as plaintiff acknowledges, the court did not address the insurer's ability to settle without the physician's consent because it was not an issue in that case. *Rogers*, 81 Ill. 2d 201. In the instant case, the conflict did not arise under the terms of the Everest Policy, nor did it affect the Chicago Institute or defendants' interests. Whether Hinshaw had a duty of disclosure is not the relevant issue as to defendants' rights to effect settlement under the Everest Policy.

¶ 90    Also, plaintiff's argument does not reconcile with the explicit language of the Everest Policy regarding consent rights. The Everest Policy states that defendant Everest had the right to "[s]ettle, or participate in the settlement of, any 'claim first made' that is settled with the consent of the general counsel of the named insured shown in the 'Declarations.' " Plaintiff concedes that he is not the named insured, and his counsel, Hickey Malia, was not the general counsel. Also, the Chicago Institute, the named insured under the Everest Policy as of January 1, 2004, waived its right to consent to settle on December 15, 2008, pursuant to the Settlement Agreement. Thus, the clear and enforceable language of the Everest Policy shows that there were no consent rights available to plaintiff, Hickey Malia, or the Chicago Institute and its counsel when the Townsley Lawsuit was settled on March 27, 2009. *Casualty Insurance Co. v. Town & Country Pre-School Nursery, Inc.*, 147 Ill. App. 3d 567 (1986). As a result, plaintiff did not have a right to consent to the settlement of the Townsley

Lawsuit.

¶ 91                    IV. Denial of Plaintiff's Motion to Vacate and for
                          Leave to File Second Amended Complaint

¶ 92       Plaintiff appeals the trial court's denial of his motion to vacate and for leave to file a second amended complaint. Plaintiff claims that the trial court erred when it denied his motion which contained new factual and legal allegations that cured errors the trial court relied on in support of its finding summary judgment in favor of defendants. Defendants argue that the motion was properly denied because plaintiff's factual and legal allegations were not new.

¶ 93                                A. Standard of Review

¶ 94       The trial court's decision of whether to grant a motion to amend pleadings is within the discretion of the trial court, and the reviewing court will reverse the trial court's decision absent an abuse of discretion. *Shutkas Electric, Inc. v. Ford Motor Co.*, 366 Ill. App. 3d 76, 82 (2006). "An abuse of discretion occurs when no reasonable person would take the view adopted by the court." *Trettenero v. Police Pension Fund*, 333 Ill. App. 3d 792, 801 (2002) (citing *In re Marriage of Blunda*, 299 Ill. App. 3d 855, 865 (1998)). "In considering whether the trial court has abused its discretion in denying plaintiff's motion for leave to file a second amended complaint, we look to the following four factors: whether (1) the proposed amendment would cure the defective pleading; (2) other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) the proposed amendment is timely; and (4) previous opportunities to amend the pleading could be identified. [Citation.]" *Shutkas Electric, Inc. v. Ford Motor Co.*, 366 Ill. App. 3d 76, 82 (2006).

¶ 95                                B. Abuse of Discretion

¶ 96       Plaintiff claims that the trial court erred it denied his motion to file a second amended complaint. In his brief, plaintiff repeats the allegations in his motion, arguing that the second amended complaint contained "new and more fully developed allegations that render erroneous the factual and legal basis on which the court relied in support of its orders" pertaining to summary judgment. Plaintiff argues that his second amended complaint contains a new claim of judicial estoppel and more specific allegations of damages. In support of his motion for leave to amend, plaintiff cites section 2-1005(g) of the Illinois Code of Civil Procedure, which states: "Before or after the entry of a summary judgment, the court shall permit pleadings to be amended upon just and reasonable terms." 735 ILCS 5/2-1005(g) (West 2008).

¶ 97                                1. Incomplete Record

¶ 98       Plaintiff has not provided this court with a transcript of the November 30, 2010, hearing on his motion for leave to file a second amended complaint. In support of the claimed error, the burden of presenting a sufficient record of the trial proceedings falls on the plaintiff.

*Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). Because the record in this appeal is incomplete, we must presume that the trial court entered its order in conformity with the law. *Foutch*, 99 Ill. 2d at 392.

¶ 99                                    2. Defects in the Pleading

¶ 100     Regardless, plaintiff's motion does not cure the defective pleading. An allegation of judicial estoppel in regard to the Lalicata Lawsuit would not succeed because the trial court found that defendant Everest had no duty to defend the claim in the first place. As previously stated, there cannot be a claim for judicial estoppel when there is no breach of the insurance contract. *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127, 151 (1999). Also, plaintiff's allegation of damages relating to the Townsley Lawsuit would not affect the result because defendants did have an obligation to reimburse plaintiff's defense costs until after the SIR was exhausted on December 15, 2008. As a result, plaintiff's second amended complaint would not have cured plaintiff's defective pleadings.

¶ 101                                    3. Prejudice to Other Parties

¶ 102     Additionally, allowing plaintiff to file a second amended complaint would prejudice defendants because it would allow plaintiff a "second bite at the apple." Plaintiff failed to raise the issue of judicial estoppel or specifically allege damages for nearly two years since filing the instant case. In that time, plaintiff did not attempt to amend his pleadings until after he moved for summary judgment and lost. Allowing plaintiff to "start over" based on facts and legal claims that were previously available to him would burden defendants with additional litigation. *Hartzog v. Martinez*, 372 Ill. App. 3d 515, 522 (2007). Therefore, we find that plaintiff's motion to amend, if granted, would cause prejudice to defendants in this case.

¶ 103                                    4. Timeliness of Amendment

¶ 104     Also, plaintiff's amendments to his pleadings were not timely. In *Hartzog v. Martinez*, 372 Ill. App. 3d 515, 522 (2007), the court held that the following:

> "[I]t would seem that the standard to be employed in determining whether a party should be allowed to amend after the entry of a final summary judgment order would be more restrictive and akin to the standard used on motions to reconsider. The purpose of a motion to reconsider is to bring to the court's attention '(1) newly discovered evidence which was not available at the time of the first hearing, (2) changes in the law, or (3) error in the court's previous application of existing law.' [Citation.] A motion to reconsider 'should not be allowed in the absence of a reasonable explanation as to why it was not made available at the time of the original hearing.' [Citation.]" *Hartzog*, 372 Ill. App. 3d at 522.

Plaintiff's second amended complaint does not contain any newly discovered evidence that was unavailable at an earlier time. The new claim for judicial estoppel was only "new" insofar as it was newly added to the pleadings, and not due to a change in the law on the

facts. Plaintiff also has not explained how his more specific damages allegations were not previously available when he filed his first amended complaint. Plaintiff's amendments to the pleadings were not timely because they did not include any new factual or legal allegations that were previously unavailable.

¶ 105                    5. Previous Opportunities to Amend

¶ 106    In his motion to vacate and for leave to file a second amended complaint, plaintiff alleges that: "During the hearing on defendants' motions for summary judgment, plaintiff requested leave to file a second amended complaint to address some of the factual and legal points raised by the cross-motions for summary judgment." A review of the transcript reveals that plaintiff did not request leave to file a second amended complaint until the August 25, 2010, hearing, after the trial court had already denied plaintiff's motion for partial summary judgment. A review of the appellate record does not indicate any earlier attempts to file a second amended complaint. Therefore, we conclude that plaintiff did not seek leave to file a second amended complaint until after he his motion for summary judgment had already been denied.

¶ 107    We cannot say that the circuit court abused its discretion when it denied plaintiff's motion to vacate and for leave to file a second amended complaint. Plaintiff did not provide this court with a complete appellate record on the matter, so we must presume the trial court did not abuse its discretion, and the facts we have before us support that conclusion. Further, plaintiff's second amended complaint did not cure defects in the pleadings, granting the motion would cause prejudice to defendants, plaintiff's attempt to amend the pleadings was not timely, and plaintiff did not attempt to file a second amended complaint at an earlier date.

¶ 108                            CONCLUSION

¶ 109    For the foregoing reasons, we find that this court has jurisdiction to review the trial court's July 13, 2010, August 25, 2010, and November 30, 2010, orders, and we decline to reverse our order denying defendants' motion to dismiss.

¶ 110    The Everest Policy neither provided plaintiff with coverage nor obligated defendant Everest with a duty to defend the Lalicata Lawsuit. Plaintiff was not covered under the Everest Policy when he filed his claim on March 29, 2004, and we find no reason to reverse the trial court's July 13, 2010, order denying plaintiff's motion for partial summary judgment.

¶ 111    Further, we affirm the trial court's August 25, 2010, order granting summary judgment in favor of defendants. Plaintiff did not have a right to consent to the settlement of the Townsley Lawsuit, and plaintiff did not allege recoverable damages for the claimed late payment for the Townsley Lawsuit. Defendants' defense payments for the Townsley Lawsuit were timely paid because the SIR did not obligate defendants to reimburse plaintiff until December 15, 2008.

¶ 112    The circuit court did not abuse its discretion when it denied plaintiff's motion to vacate and for leave to file a second amended complaint. Plaintiff did not provide this court with

a complete appellate record on the matter, so we reviewed the pleadings to formulate our decision. Plaintiff's second amended complaint did not cure the defects in the pleadings. In addition, granting the motion would cause prejudice to defendants, was not timely, and could have been filed at an earlier date.

¶ 113    We affirm the circuit court in all respects.

¶ 114    Affirmed.

¶ 115    PRESIDING JUSTICE LAMPKIN, specially concurring.

¶ 116    I write separately because I do not believe this court had jurisdiction to consider plaintiff's December 22, 2010, appeal of the circuit court's orders denying his motion for partial summary judgment (July 13, 2010) and granting defendants' cross-motion for summary judgment (August 25, 2010) where plaintiff failed to file a proper posttrial motion that would have tolled the 30-day time period for filing a notice of appeal from a final judgment. However, I concur with the majority that the circuit court did not abuse its discretion in denying plaintiff's motion for leave to file a second amended complaint.

¶ 117    As the majority correctly states, it is our duty to consider issues of jurisdiction. *People v. Smith*, 228 Ill. 2d 95, 104 (2008). A jurisdictional challenge presents a question of law that we review *de novo*. *In re Marriage of Demaret*, 2012 IL App (1st) 111916, ¶ 25.

¶ 118    Plaintiff's motion provided:

"The plaintiff, Fred Geisler, M.D., by and through his attorneys, *** hereby submits his motion for leave to file a second-amended complaint and to set aside and vacate the orders entered on July 13, 2010, and August 25, 2010, stating as follows:

1. On July 13, 2010, the court entered an order denying plaintiff's motion for partial summary judgment. ***

2. On August 25, 2010, the court entered an order granting defendants' motion for summary judgment. ***

3. During the hearing on defendants' motions for summary judgment, plaintiff requested leave to file a second-amended complaint to address some of the factual and legal points raised by the cross-motions for summary judgment.

4. At that time, the court directed plaintiff to file a motion seeking leave to file a second-amended complaint.

5. Attached hereto is a copy of plaintiff's proposed second-amended complaint.

6. The proposed second-amended complaint contains new and more fully eveloped allegations that render erroneous the factual and legal bases on which the court relied in support of its prior orders. For example, the proposed second-amended complaint contains more specific factual allegations and exhibits to support plaintiff's position that defendants should be estopped under cases such as *Employers Ins. of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127 (1999), from asserting the defenses to coverage for the *Lalicata* lawsuit on which the court based its summary

-21-

judgment orders.

7. The proposed second-amended complaint also contains new and specific allegations that plaintiff incurred damages in the form of additional attorney's fees as a result of the 18-month delay in defendants' payment of defense costs relative to the *Townsley* lawsuit. Such allegations cure the perceived defect that plaintiff had not alleged any contract damages related to the *Townsley* lawsuit and, therefore, could not sustain a cause of action under § 55 of the Insurance Code for such delay.

8. Section 5/2-1005(g) of the Illinois Code of Civil Procedure states: Before or after the entry of summary judgment, the court shall permit pleadings to be amended upon just and reasonable terms.'

9. It would be reasonable and just to permit plaintiff to amend his pleadings at this time by allowing him to file a second-amended complaint.

WHEREFORE, for the reasons set forth herein, plaintiff requests that he be granted leave to file within 14 days a brief in support of this motion to reconsider which points out the errors in the court's interpretation of the subject policy of insurance and further supports his claims that the court's prior orders should be vacated, and that he be granted leave to file a second-amended complaint in substantially the same form as the pleading attached hereto."

¶ 119    After reviewing the entirety of plaintiff's September 24, 2010, "Motion to Reconsider, For Leave to File Second-Amended Complaint, and to Set Aside and Vacate Orders Entered July 13, 2010 and August 25, 2010," I would conclude that, despite including the word "vacate" in the introduction and in his prayer for relief, the substance of plaintiff's motion did not challenge the trial court's prior orders. See *Shutkas Electric, Inc. v. Ford Motor Co.*, 366 Ill. App. 3d 76, 81 (2006) (to determine whether a motion qualifies as a "posttrial motion," we review the content, substance, and relief sought). Rather, the substance of plaintiff's motion merely requested leave to file a second amended complaint to correct the errors in his amended complaint. Notably, those defects that plaintiff wished to cure were based on evidence that was within the doctor's possession at the time he filed his first amended complaint.

¶ 120    Plaintiff, therefore, did *not* specifically request one or more of the types of relief set out in section 2-1203(a) of the Code of Civil Procedure (Code), namely, a rehearing, retrial, modification or vacation of the judgment, or other similar relief. 735 ILCS 5/2-1203(a) (West 2010). In other words, plaintiff did not challenge the summary judgment rulings; instead, he requested leave to cure the defects in his complaint. Courts have repeatedly stated that a motion for leave to file an amended complaint does *not* qualify as "other relief." *Fultz v. Haugan*, 49 Ill. 2d 131, 136 (1971); *Shutkas Electric, Inc.*, 366 Ill. App. 3d at 81. As a result, plaintiff's motion was not a valid posttrial motion and, therefore, did not toll the requisite time within which to file his notice of appeal under Illinois Supreme Court Rule 303(a)(1) (eff. May 30, 2008). Consequently, I would find that plaintiff's December 22, 2010, notice of appeal did not provide this court with jurisdiction to consider the circuit court's July 13, 2010, and August 25, 2010, orders denying partial summary judgment and granting summary judgment in favor of defendants because those orders were final judgments lacking a timely

posttrial motion.

¶ 121  Although plaintiff failed to file a proper posttrial motion, his motion did seek leave to amend. In their appellant brief, defendants argued that this court also lacked jurisdiction to consider plaintiff's motion to amend because the circuit court's November 30, 2010, order denying that motion was not final and appealable where it did not ascertain and fix the rights of the parties as required by Rule 303(a)(1).

¶ 122  Rule 303(a)(1) requires that a notice of appeal be filed within 30 days after the entry of a final judgment. "An order is final if it 'terminates the litigation between the parties on the merits or disposes of the rights of the parties either on the entire controversy or on a separate *** part of it.' [Citation.] Further, an order is final when, if affirmed, the only thing remaining is to execute the judgment. [Citation.]" *Village of Bellwood v. American National Bank & Trust Co. of Chicago*, 2011 IL App (1st) 093115, ¶ 14.

¶ 123  While the circuit court's August 25, 2010, order granting defendants' motion for summary judgment in its entirety was a final judgment disposing fully of the controversy between the parties, the court's November 30, 2010, order denying plaintiff's motion for leave to amend, however, also was a final judgment in the sense that it terminated plaintiff's right to amend his pleading and reinstitute litigation. Plaintiff filed his notice of appeal on December 22, 2010, within 30 days of that order. I, therefore, would find this court has jurisdiction to review plaintiff's contention related to the circuit court's denial of his motion to amend. Turning to the substance of that argument, I concur with the decision of the majority.

¶ 124  In conclusion, I would reverse this court's May 17, 2011, order denying defendants' motion to dismiss the appeal for lack of jurisdiction and dismiss plaintiff's appeal of the summary judgment rulings. However, I concur in the majority's conclusion to affirm the trial court's refusal to allow a second amended complaint.

¶ 125  JUSTICE GARCIA, specially concurring.

¶ 126  I write separately to express additional reasons Everest's "lack of appellate jurisdiction" claim is wholly without merit.

¶ 127  On cross-motions for summary judgment, the circuit court denied summary judgment to Geisler on July 13, 2010; the court granted summary judgment to Everest on August 25, 2010. On September 24, 2010, Geisler filed what he contends was his posttrial motion under both Rule 303(a)(1) and section 2-1203. In his motion, Geisler sought explicit relief. The motion asked that "the court's prior orders [denying and granting summary judgment] *** be vacated." Geisler's request that the summary judgment order of August 25 be vacated plainly satisfies the definition of a posttrial motion in section 2-1203 as one that seeks "to vacate the judgment." In addition, Geisler's September motion sought leave to file an amended complaint. Geisler argued that the amended complaint would "address some of the factual and legal points raised by the cross-motions for summary judgment." According to the motion, the amended complaint contained "new and more fully developed allegations that render erroneous the factual and legal bases on which the court relied in support of its [July 13 and August 25] orders." Based on the quoted language from the September motion, it

would seem beyond contention that the motion was "directed against the [summary] judgment" entered in favor of Everest as required by Rule 303(a)(1).

¶ 128    To all of this, Everest asserts that Geisler's September motion is nothing more than a "Motion [that] sought leave to file an amended complaint." Of note, Everest fails to explain what is missing from Geisler's motion to qualify as a proper postjudgment motion under the express language of either section 2-1203 or Rule 303. Everest's real contention appears to be that too much relief was requested in the September motion by requesting leave to file an amended complaint in addition to the request that the grant of summary judgment be vacated. Of course, case law is contrary to Everest's implicit suggestion that insufficient detail was provided to support the relief Geisler requested to "vacate the judgment" as opposed to the numerous reasons he gave for requesting leave to file an amended complaint. See *Kingbrook, Inc. v. Pupurs*, 202 Ill. 2d 24, 31-32 (2002) (neither the Code nor the supreme court rules contain "a specificity requirement" for postjudgment motions arising from a nonjury case). Under the clear holding of *Kingbrook*, Geisler's motion met the requirements of Rule 303(a)(1) and section 2-1203 to qualify as a posttrial motion.

¶ 129    In *Kingbrook*, the supreme court addressed an issue similar to the one before this court: "In a nonjury case, what degree of detail must be included in a motion to reconsider for such a motion to qualify as a 'post-judgment motion' within the meaning of the Code of Civil Procedure (see 725 ILCS 5/2-1203 (West 1998)) and the rules of this court (see 155 Ill. 2d R. 301(a)), such that the motion will toll the time for filing a notice of appeal until its disposition?" *Id.* at 25-26. The essential facts in *Kingbrook* were undisputed. The circuit court entered summary judgment in favor of the defendants. *Id.* at 26. The plaintiff filed a single-sentence motion, titled " 'Motion for Reconsideration.' " *Id.* The single sentence stated: "[The plaintiff] hereby moves the Court to reconsider its decision granting severing [*sic*] judgment in favor of the Defendants." *Id.* at 26-27. The circuit court denied the motion; the appellate court dismissed the subsequent appeal, concluding the reconsideration motion "was not a proper post-judgment motion." *Id.* at 27. The supreme court reversed, ruling that the one-sentence motion for reconsideration was a proper posttrial motion in a case decided without a jury: "We decline to hold that post-judgment motions in nonjury cases must contain some undefined degree of detail, lest the filer risk that the reviewing court hold that motion is not a motion at all. It is not clear that a nonspecfic motion could not fulfill its role, and there is no reason to require the filer to guess how much detail is enough." *Id.* at 33. I am unpersuaded by any suggestion that because *Kingbrook* addressed a motion titled solely as a "Motion for Reconsideration," *Kingbrook* is not dispositive of the adequacy of Geisler's motion that sought other relief in addition to its request "to reconsider."

¶ 130    Geisler's September motion was a comprehensive posttrial motion that both attacked and sought to vacate the summary judgment that was entered against him. Efficient use of our limited judicial resources means a comprehensive posttrial motion is no less favored than a single-sentence motion. This is particularly so when the movant contends that the entered judgment is faulty because an amended complaint would "cure" any defect in the pending complaint and the motion prays that the entered judgment be "vacated." In this regard, I note that Geisler's request that the court's July 13 order denying his motion for summary judgment be vacated makes little sense in light of his request to file an amended complaint,

which, if granted, would necessarily mean that a material question of fact remained to preclude summary judgment in his favor as well. Equally unsupportable is Everest's implicit contention that we ignore explicit "relief" language in the September motion that the circuit court vacate the judgment it entered in favor of Everest on August 25, and focus only on Geisler's request for leave to file an amended complaint.

¶ 131    It is clear we have jurisdiction as Geisler's September motion satisfied the requirements of the Code and Rule 303(a)(1) in a nonjury case, minimal as those requirements are, as *Kingbrook* made clear.